<div style="margin-left:2em;">
BUFORD<br>
vs.<br>
COMMONWEALTH
</div>

Wherefore, the judgment is affirmed.

FARROW and PETERS for plaintiff; RAND for defendants.

---

## Buford vs. Commonwealth.

Case 9

### ERROR TO LEXINGTON CITY COURT.

1. By the Revised Statutes, page 243, such offences as are punished by death or confinement in the penitentiary, are declared to be felonies; all other offences, whether such at common law, or declared such by statute, are misdemeanors.

2. Keeping a house in which gambling is permitted to be done, is a misdemeanor, and in such cases the jury is drawn from the box as in civil cases, and each party may strike three from the list, and no more.

3. An indictment, charging that money and property was *won* and *lost*, is good, without alleging that it was bet.

4. In an indictment against a coffee-house keeper for permitting gaming to be carried on his house, it is enough to aver that he was a coffee-house keeper, without averring that he was licensed.

5. Where there is one good count in an indictment for a misdemeanor, and the verdict be guilty, generally, judgment may be given on the verdict.

6. A coffee-house keeper, or tavern keeper, convicted of setting up or permitting a gambling table or faro bank in his house, incurs

a penalty of five hundred dollars, &c., and a jury has no discretion to assess a less fine. (*Rev. Stat., page* 369.)

Judge CRENSHAW delivered the opinion of the court.

This is an indictment found in the city court of Lexington against Buford.   There are two counts in the indictment—the first charging that Buford, being a coffee-house keeper in said city, permitted a faro bank to be set up in a house in the city over which Buford had control, at which faro bank, money and property were won and lost.

The second count charges that Buford, being a coffee-house keeper in said city, leased a certain house in the city over which he had control, for the purpose of setting up a faro bank, at which property might be won and lost.

A demurrer was filed to each of these counts, which was overruled by the court—a trial was had, and a verdict and judgment were found and rendered against the defendant—the finding of the jury being, that Buford was "guilty as charged in the indictment," and the judgment being for $500.

A motion in arrest of judgment, and for a new trial, was overruled.   In the progress of the trial, the commonwealth was allowed the privilege of challenging, peremptorily, three of the jurymen, and this is alleged to have been error.   And the defendant claimed the right to challenge, without cause, more than three jurymen, which was refused.

This proceeding was instituted since the adoption of the Revised Statutes, and on page 243, of this volume, it is declared, that such offenses as are punishable with death, or confinement in the penitentiary, are felonies, and that all other offenses, whether at common law, or made so by statute, are misdemeanors.   The offense therefore, charged in this indictment, is a misdemeanor merely, and not a *crime*, in the technical signification of the word.   In the same volume, page 432, sec. 4, the manner of making up a jury to try a criminal cause, is specified; and the fifth section provides, that in all cases of jury trial, (which

*(margin notes)*

BUFORD
*vs.*
COMMONWEALTH

June 15.
Case stated.

1. By the Revised Statutes, page 243, such offenses as are punished by death, or confinement in the penitentiary, are declared to be felonies; all other offenses, whether such at common law, or declared such by statute, are misdemeanors.

2. Keeping a house in which gambling is

BUFORD
*vs.*
COMMONWEALTH

permitted to be done, is a misdemeanor, and in such cases, the jury is drawn from the box as in civil cases, and each party may strike three from the list, and no more.

means, of course, all other than criminal cases,) the clerk shall draw from the jury box the names of eighteen of the jury, and write them, as drawn, on two slips of paper, and deliver one to each party, from which the plaintiff and defendant may, each, strike three, and return the list to the clerk, who shall call the first twelve names not erased, and swear them as a jury, to try the case. Here, in all cases other than criminal cases, *each party*, not excluding, and of course, including the commonwealth, as she is a party in the eye of the law, has a right to object to, or challenge three jurymen, without cause. Again, on page 428, section 11, it is provided that *each party*, litigant, shall have the right of peremptory challenge to one fourth of the jury summoned, and the right to challenge for cause as now given by law. The commonwealth is clearly embraced in the terms of said fifth, and said eleventh sections, and no intention is manifested to exclude her from their provisions. We conclude, therefore, that the commonwealth had the right to three peremptory challenges, and that the court did not err in allowing it. And, it being in criminal cases only, that the defendant has a right to challenge, without cause, more than three jurymen, and the offense charged in this case not being, as we have shown, a crime, but a misdemeanor, it follows that the court did not err in denying the defendant the right to challenge more than three jurymen, peremptorily.

3. An indictment, charging that money and property was *won* and *lost* is good, without alleging that it was bet.

It is also alleged that the court erred in overruling the demurrers to the indictment. And, as to the first count, it is argued that it is deficient in not charging that money was *bet* as well as won and lost. To this argument it is sufficient to reply, that it is averred that money and property were *won* and *lost*, which is impossible, unless there had been money and property *bet*.

4 In an indictment against a coffee

It is objected further to this count, that it is not averred that the defendant was a *licensed* coffee-house keeper, nor that the faro bank was set up, and the

gaming carried on, in the house in which the coffee-house was kept. If it be conceded, that the coffee-house keeper, against whom the law, found in the Revised Statutes, page 368–9, denounces a penalty of $500, must be a *licensed* coffee-house keeper, still, we apprehend, it is sufficient to aver, simply, in an indictment, that the offender was a coffee-house keeper. Such an averment is in the language of the statute, and should be considered as implying that the offender is a licensed coffee-house keeper. This simple averment sufficiently apprises the defendant of the offense with which he is charged, and enables him as well to defend himself, as if he were, in so many words, charged to be a *licensed* coffee-house keeper. This additional averment would be of no service to the defendant, and every substantial purpose of justice is as well answered without, as with it. The objection that it is not made, is merely technical, and whatever strictness may anciently have been required, the modern practice looks more to substance than to mere technicality. A coffee-house keeper is looked upon by our laws as one who has obtained a license to keep a coffee-house. One who has not obtained such license, and vends liquors by retail, is the keeper of a tippling-house, and is not a coffee-house keeper.

If it were necessary to constitute the offense charged in this count of the indictment, to aver that the faro bank was permitted to be set up, *in the house in which the coffee-house was kept*, the law would answer no other purpose than to encumber the statute book. All that a coffee-house keeper needs to do to avoid the penalty, is to procure a house convenient to his coffee-house in which to set up, or permit to be set up, a faro bank. We think, therefore, that there is no necessity for the averment insisted on in this particular. The extreme cases supposed by counsel, of a coffee-house keeper permitting a faro bank to be put up, miles from his coffee-house, have no practical bearing, and are far-fetched. If any such extreme

BUFORD
*vs.*
COMMONWEALTH

house keeper for permitting gaming to be carried on his house, it is enough to aver that he was a coffee house keeper, without averring that he was licensed.

BUFORD
*vs.*
COMMONWEALTH

5. Where there is one good count in an indictment for a misdemeanor, and the verdict be guilty, generally, judgment may be given on the verdict.

6. A coffee-house keeper, or tavern keeper, convicted of setting up, or permitting gambling table or faro bank in his house, incurs a penalty of five hundred dollars, &c., and a jury has no discretion to assess a less fine. (*Rev. Stat.*, 369.)

case should ever arise in the proof, under a count like the one we are considering, it will then be time enough to dispose of it. We think, therefore, that the first count is good.

In regard to the second count, it is not necessary that we make any remarks. For, if it were conceded that this count is bad, yet, the verdict being general, and there being a good count to sustain it, the verdict is sufficient. (*Chitty's Criminal Law,* 1st vol., 522.)

The court was asked by defendant to instruct the jury in substance, that they, in their discretion, might find a sum against him, if they found him guilty, of not less than $250, nor more than $500. The court refused this instruction, and properly. It was clearly shown that the defendant was a coffee-house keeper, and the law provides, Revised Statutes, page 369, that if the offender be a tavern keeper, coffee-house keeper, or other retailer of spirituous liquors, he shall be fined five hundred dollars, forfeit his license, and never be again licensed. The jury, therefore, had no discretion as to the amount of the fine, and it was only necessary for them to find the defendant guilty, without assessing the fine, the law having fixed it at a certain and definite sum. The indictment having charged the defendant as a coffee-house keeper, the jury, in finding him guilty as charged in the indictment, found, of course, that he was a coffee-house keeper.

The evidence is clear that a faro bank was set up in a house over which the defendant had control, and although there was no positive testimony that the defendant set it up, or permitted it to be done, the law declares, Revised Statutes, page 369, that after the proof of setting up, it shall be presumed to have been with the permission of the person controlling or occupying the house.

Another instruction, besides the one already noticed, was asked by the defendant, which the court declined to give, and which we think was properly

refused, because it required of the jury to believe, *from the proof*, that the defendant knew of the game going on in his house, whereas the law presumes that it was by his permission, and of course, within his knowledge, upon the hypothesis that there had been proof of the setting up of the bank; and this was clearly proved. The instruction given at the instance of the plaintiff, contained the principles laid down in this opinion, and. was correct. And the testimony fully authorized the finding of the jury.

Wherefore, the judgment is affirmed.

SHY and BECK, ROBINSON and JOHNSON for the plaintiff; HARLAN, Attorney General, for the commonwealth.